IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

DONALD L. BOYER,                        CASE NO. 2:07-cv-629
                                        JUDGE WATSON
            Petitioner,                 MAGISTRATE JUDGE KEMP

v.

MICHAEL SHEETS, Warden,

            Respondent.

ORDER and
REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings this action for a writ of habeas corpus pursuant to 28 U.S.C. §2254.  This matter is before the Court on the instant petition, respondent's return of writ, petitioner's traverse, and the exhibits of the parties.  For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**. Petitioner's request for an evidentiary hearing is **DENIED**.

## FACTS AND PROCEDURAL HISTORY

The Ohio Tenth District Court of Appeals summarized the facts and procedural history of this case as follows:

> The Franklin County Grand Jury indicted appellant on the 12 counts for which he was convicted and an additional count of rape by vaginal intercourse, for which he was acquitted. The stated victim for all counts was E.D., who was between six and eight years old during the different periods for each offense or group of offenses alleged in the indictment. The victim is appellant's niece, the daughter of appellant's wife's sister.
>
> E.D. was ten years old at the time of trial. She testified that the

sexual conduct occurred in several rooms of appellant's home. E.D. testified that she made frequent overnight visits to appellant's house. At times, when they were watching TV or playing in a computer room, which initially was located upstairs and later moved to the basement, appellant would put his exposed penis on her "butt" beneath her underwear when E.D. was sitting in appellant's lap. (Tr., Vol. II, at 21-22, 45.) On other occasions, appellant would take E.D. into a basement storage room, and hold her upside down and "bite" her "private." (Tr., Vol. II, at 27-34, 36-38.) Appellant's penis would be exposed when he did this and he would try to insert it in E.D.'s mouth, although he did not succeed in doing so. E.D. also testified that sometimes during the sleepovers she would awake to find that her pants had been unzipped or unbuttoned while she was asleep. E.D. further testified that often her older sister would be present and that appellant would take advantage of the older sister leaving the room to begin his advances.

E.D.'s mother testified that she moved her family to Columbus, Ohio, in 1997, occupying a home close to that of her sister and appellant. E.D. and her older sister began spending the night with appellant and his wife at their residence on weekends once or twice a month. When E.D. was six years old, her mother noticed changes in her daughter's behavior, such as weight gain and compulsive chewing on clothing and hair. E.D. would demonstrate anger towards family members and avoided hugging appellant or his wife. E.D. eventually told her mother that she wanted her uncle to "stop," but refused to explain what she meant. E.D.'s mother was eventually able to elicit more information about appellant's conduct and took E.D. to Children's Hospital for a child-sex victim evaluation.

E.D.'s sister, N.D., testified and largely corroborated her sister's account of their frequent visits and sleepovers at appellant's home. She stated that often times they would play video games, and that N.D. would go to sleep and her sister would continue to play video games with appellant. N.D., who is five years older than her sister, specifically described an incident in

which she was sleeping in the same room as her sister, and awoke to find appellant and E.D. lying next to each other with a sheet or blanket over them. When appellant realized that N.D. had awoken, appellant, who was wearing only boxers, hastily got up and went to sit in a nearby chair. N.D. did not report the incident to anyone because she was "afraid of how he would react." (Tr., Vol.II, 109.) Like her mother, N.D. noticed a change in E.D.'s behavior around this time, particularly on one occasion when the family went to the grocery store where appellant worked and E.D. refused to go inside.

Appellant testified on his own behalf and denied all allegations of sexual misconduct. Appellant's wife testified that she heard or observed nothing unusual during visits by her nieces, and got up frequently to check on the girls when they spent the night. Appellant conceded that there were frequent periods from 2001-2004, when he was alone with E.D.

The jury returned a verdict of not guilty of vaginal rape alleged in Count 1 of the indictment, but guilty of all counts of gross sexual imposition and rape based on oral genital contact in the remaining counts. The court sentenced appellant to a term of life imprisonment on Count 5 (rape) of the indictment, six years incarceration on Counts 6 and 10 of the indictment (rape) and three years each on the remaining nine gross sexual imposition counts. The rape sentences were to be served consecutively, with the gross sexual imposition sentences to be served concurrently. After a further hearing, appellant was adjudicated a sexual predator.

***

The most pertinent parts of E.D.'s testimony ... was, contrary to appellant's assertions on appeal, fairly explicit on the question of physical contact and supports the jury's verdict:

Q. What happened in there?

3

A. He would put me upside down and try and make me put his privates in my mouth, but I would turn away. and then he would bite my privates, but he would hold on to my stomach so I wouldn't fall or anything.

Q. When you say he would hold on to you, how did that work? I don't understand. can you explain it?

A. Like he would put-turn me upside down and then hold me like right here.

* * *

Q. And then what happened when you were upside down?

A. He would try and put his privates in my mouth but I would look away. and then he would bite my privates, but my clothes would still be on.

* * *

Q. And how was his private able to come near your mouth?

A. Because he was-when he was holding me upside down my head would look straight down and then like it would be out so I would turn my head.

Q. How would they be out? were his clothes on?

A. Yes.

Q. And how would the private be able to be out of the clothes?

A. He like took it out of his underwear and his sweats and then put it out.

Q. And I'm sorry, put it where?

A. Put it outside of his sweats and underwear.

Q. But kept his clothes on?

4

A. Yes.

Q. And did his private touch your face?

A. Yes.

Q. Did it touch your mouth?

A. Sometimes.

(TR. II, 27.)

***

With respect to the timeframes for the gross sexual imposition counts, E.D.'s testimony established that on frequent occasions, both before and after the "computer room" in which many acts took place was moved from one part of the house to another, appellant frequently engaged in sexual contact with her other than the conduct forming the basis for the cunnilingus and fellatio rape accounts. E.D. testified that appellant would place her in his lap when they were playing video games and insert his naked penis into her clothing, placing it in direct contact with the bare skin of her buttocks, rectal area and genitals. E.D. testified that this conduct occurred almost every time she visited, and that she was visiting her aunt and uncle on two or more weekends a month. The timeframes alleged in the indictment's gross sexual imposition counts, which break offenses down to periods when E.D. was age six, seven, and eight, are not chronologically deficient, as the jury could reasonably infer that conduct occurred in the various rooms described by the victim during the various years alleged in the indictment. This is all the more reasonable an inference when, as here, the allegations of sexual abuse against a child involve a repeated course of conduct over an extended period of time. *State v. Draughon,* Franklin App. No. 02AP-895, 2004-Ohio-320, *¶ 87; Barnecut, supra.*

*State v. Boyer*, 2006 WL 3825264 (Ohio App. 10th Dist. December 29, 2006).  Represented by

5

the same counsel, petitioner filed a timely appeal.  He raised the following assignments of

error:

> I. The Trial Court by amending Counts 5, 6 and 10 at the conclusion of the State's case to expand the alleged dates contained in the Indictment and Bill of Particulars to a 30 month period from July 2001 to December 2003 and therein refusing to grant a mistrial deprived the Defendant of a fair trial and violated his State and Federal Constitutional Rights to due process of law and consideration by a grand jury.

> II. The Trial Court, by admitting State's Exhibit 13 The Medical Forensic Interview Summary of the Child Assessment Center containing the results of an interview of the alleged victim, deprived the Defendant of his right of Confrontation and due process under State and Federal Constitution.

> III. The findings of guilty on Counts 2 through 13 are not supported by the evidence required by law.

> IV. The findings of guilty on Counts 2 through 13 are against the manifest weight of the evidence.

> V. The findings of the Trial Court that Defendant is a sexual predator is not supported by clear and convincing evidence as required by law.

*See id.*  On December 29, 2006, the appellate court affirmed the judgment of the trial court.

Petitioner filed a motion to certify the case to the Ohio Supreme Court, *Exhibit 11 to Return*

*of Writ*, which motion was denied.  *Exhibit 14 to Return of Writ*.  Still represented by

counsel, petitioner filed a timely appeal to the Ohio Supreme Court.   He raised the

following propositions of law:

> 1.  The amendment as to the alleged dates of the offense after

6

the prosecution has rested their case by expanding the dates to a period of time from July 1, 2001 to December, 2003 (i.e., 18 months) deprived the defendant of [] State and Federal Constitutional rights to due process of law in consideration of the criminal accusations by a grand jury.

2. Refusal of the trial court to grant a mistrial after the conclusion of the State's case allowing the State to expand the alleged dates from those set forth in the Indictment and the Bill of Particulars to a period of eighteen (18) months deprives the defendant of due process of law and a fair trial.

3. The admission of business records of the medical forensic interview summary from the Child Assessment Center without testimony from the person obtaining the records where the child has previously testified and not provided the information on its live testimony as provided by the records deprives the defendant of his right to confrontation and due process under the State and Federal Constitution.

*Exhibit 16 to Return of Writ.* On May 2, 2007, the Ohio Supreme Court dismissed the appeal.

*State v. Boyer*, 113 Ohio St.3d 1492 (2007).

On July 5, 2007, petitioner filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. He alleges that he is in the custody of the respondent in violation of the Constitution of the United States based upon the following grounds:

1. Consecutive sentencing.

2. Amendment of the indictment.

3. Improper admission of records.

It is the position of the respondent that petitioner's claims are waived or without merit.

**PROCEDURAL DEFAULT**

In recognition of the equal obligation of the state courts to protect the constitutional

rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required fairly to present those claims to the highest court of the state for consideration.  28 U.S.C. §2254(b), (c).  If he fails to do so, but still has an avenue open to him by which he may present the claims, his petition is subject to dismissal for failure to exhaust state remedies.  *Id.; Anderson v. Harless*, 459 U.S. 4, 6 (1982) *(per curiam)*; *Picard v. Connor*, 404 U.S. 270, 275-76 (1971).  If, because of a procedural default, the petitioner can no longer present his claims to a state court, he has also waived them for purposes of federal habeas review unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error.  *Murray v. Carrier*, 447 U.S. 478, 485 (1986); *Engle v. Issac*, 456 U.S. 107, 129 (1982); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

In the Sixth Circuit, a four-part analysis must be undertaken when the state argues that a federal habeas claim is precluded by the petitioner's failure to observe a state procedural rule.  *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule."  *Id.*  Second, the Court must determine whether the state courts actually enforced the state procedural sanction.  *Id.*  Third, it must be decided whether the state procedural forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim.  *Id.*  Finally, if the Court has determined that a state procedural rule was not complied with and that the rule was an adequate and independent state ground,

8

then the petitioner is required to demonstrate that there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error. *Id.* This "cause and prejudice" analysis also applies to failure to raise or preserve issues for review at the appellate level. *Leroy v. Marshall,* 757 F.2d 94 (6th Cir. 1985).

In claim one, petitioner asserts that his sentence violates *State v. Foster*, 109 Ohio St.3d 1 (2006). This claim is readily apparent from the face of the record, and should have been raised on direct appeal, but was not. Further, petitioner now may no longer present such claim to the state courts under Ohio's doctrine of *res judicata. See State v. Cole*, 2 Ohio St.3d 112 (1982); *State v. Ishmail*, 67 Ohio St.2d 16 (1981); *State v. Perry*, 10 Ohio St.2d 175 (1967). The state courts were never given an opportunity to enforce the procedural rule due to the nature of petitioner's procedural default. This Court deems the first and second parts of the *Maupin* test to have been satisfied.

This Court must also decide whether the procedural rule at issue constitutes an adequate and independent basis upon which to foreclose review of petitioner's federal constitutional claim. This task requires the Court to balance the state's interests behind the procedural rule against the federal interest in reviewing federal claims. *See Maupin v. Smith*, 785 F.2d at 138. Under this analysis, the procedural rule barring claim one constitutes an adequate and independent state ground for denying relief. The state courts must be given a full and fair opportunity to remedy alleged constitutional defects. The requirement that all available claims be presented at the first opportunity serves the state's interests in finality and in ensuring that claims are adjudicated at the earliest possible

opportunity. Further, the doctrine of *res judicata* is stated in unmistakable terms in numerous Ohio decisions and Ohio courts have consistently refused to review claims on the merits under that doctrine. *See State v. Cole*, *supra*; *State v. Ishmail*, *supra*; *State v. Perry*, *supra*.

Petitioner has waived his right to present claim one for federal habeas review. He can still secure review of this claim on the merits if he demonstrates cause for his failure to follow the state procedural rule as well as actual prejudice from the constitutional violation that he alleges. Petitioner states that he could not raise his claim under *Foster* at the time he filed his appellate brief, on February 8, 2006,[1] because the Ohio Supreme Court did not issue its decision in *Foster* until February 27, 2006.

This argument is not persuasive. Contrary to petitioner's allegation here, the record indicates that he filed his appellate brief on March 20, 2006, after the Ohio Supreme Court's February 27, 2006, decision in *Foster*. *See State v. Foster, supra*, 109 Ohio St.3d at 1; *Exhibit 6 to Return of Writ*. Further, on June 28, 2006, petitioner filed a motion to include additional authority in support of his appellate brief – he did not, at that time make any attempt to supplement his appeal to include a claim under *Foster*. The appellate court granted his motion on July 7, 2006. *Exhibits 8 and 9 to Return of Writ*. On December 29, 2006, the Ohio Tenth District Court of Appeals dismissed petitioner's appeal. *Exhibit 10 to Return of Writ*.

---

[1] Petitioner actually indicates that he filed his appellate brief on February 8, 2007, *see Traverse*; however, this appears to be a typographical error. The appellate court denied petitioner's appeal on December 29, 2006. *State v. Boyer, supra*; *Exhibit B to Petition*.

10

Thus, the record reflects that petitioner had ample opportunity after *Foster* to raise the claim in his direct appeal.  Furthermore, assuming, *arguendo*, that *Foster* had not been issued prior to the date of his appellate brief, the United States Supreme Court issued *Blakely v. Washington*, 542 U.S. 296 (2004), the case on which *Foster* is premised, on June 24, 2004, long before the trial court sentenced petitioner in this case.  *Blakely* had obvious potential impact on Ohio's sentencing statutes and on petitioner's sentence in this case, and nothing prevented petitioner from raising a claim under *Blakely*.  In short, petitioner has failed to establish cause or prejudice for his procedural default of claim one.

Beyond the four-part *Maupin* analysis, this Court is required to consider whether this is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent."  *Murray v. Carrier*, 477 U.S. at 491; see also *Sawyer v. Whitley*, 505 U.S. 333.  After review of the record, the Court does not deem this to be such a case.

### CLAIM TWO

In claim two, petitioner asserts that he was denied a fair trial because the trial court permitted the State to amend the indictment to change time frames set forth in each count of rape charged against him mid-trial.  The state appellate court rejected this claim as follows:

> Appellant's first assignment of error asserts that the trial court erred in permitting amendment, after the state had rested, of the timeframe set forth in the indictment for the rape counts in the indictment (5, 6 and 10) to a wider time period to conform to the evidence adduced at trial. As framed in the indictment,

Count 5 alleged conduct occurring between March 29 and June 12, 2002. Count 6 alleged conduct occurring between June 13, 2002 and March 28, 2003. Count 10 of the indictment alleged conduct occurring between March 29 and December 1, 2003. As amended at trial, all three counts alleged conduct occurring between July 1, 2001 and December 1, 2003, when the victim was between the ages of six and eight.

Crim.R. 7(D) allows for amendment of an indictment at any time before, during, or after trial:

(D) Amendment of indictment, information, or complaint.

The court may at any time before, during, or after a trial amend the indictment, information, complaint, or bill of particulars, in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged. If any amendment is made to the substance of the indictment, information, or complaint, or to cure a variance between the indictment, information, or complaint and the proof, the defendant is entitled to a discharge of the jury on the defendant's motion, if a jury has been impaneled, and to a reasonable continuance, unless it clearly appears from the whole proceedings that the defendant has not been misled or prejudiced by the defect or variance in respect to which the amendment is made, or that the defendant's rights will be fully protected by proceeding with the trial, or by a postponement thereof to a later day with the same or another jury. * * *

In addressing the propriety of an amendment under this provision, courts have stated that the essential purpose of the indictment is to compel the government to aver all material facts alleged to constitute the essential elements of the offense, and thereby afford the accused adequate notice of the charges and an opportunity to defend himself against them. *State v. Sellares* (1985), 17 Ohio St.3d 169. A precise time and date of an alleged offense are ordinarily not essential elements, and the failure to provide such specific times and dates in the indictment will not of itself provide a basis for dismissal of the charges. *Id*. at 172. It is axiomatic that in cases involving sexual

misconduct with a young child, precise times and dates of the conduct or offenses often will not be determined. *State v. Barnecut* (1988), 44 Ohio App.3d 149. The inability of the state to produce such specific chronological information is without prejudice to the defendant provided that failure to allege or prove specific times and dates does not establish a material deterrent to the preparation of the defense. *Id.*

If the evidence ultimately establishes a variance between the dates alleged in the indictment and the evidence adduced at trial, the prosecution or court may amend the indictment pursuant to Crim.R. 7(D) to conform to the evidence offered in the state's case-in-chief. *State v. Koelling* (Mar. 21, 1995), Franklin App. No. 94AP-866. A defendant seeking reversal of his conviction based upon such an amendment by the trial court must show both an abuse of discretion on the part of the trial court in amending the indictment and resulting prejudice to the defense. *State v. Beach*, 148 Ohio App.3d 181, 2002-Ohio-2759, at ¶ 23.

Appellant specifically argues in the present case that prejudice ensued because the victim described many of the incidents as occurring in or near the computer room in the basement of appellant's house, and this room did not exist during the periods alleged in the indictment for the rape counts.

Although we will address the other evidence of the offenses heard at trial under appellant's other assignments of error, we note that the timeframe alleged by the state after indictment did not alter the characteristics of the offenses in other respects, particularly the age of the victim or the general circumstances under which the crimes occurred. The specific circumstance that some of the alleged locations described by the victim concededly did not comport with some of the timeframes alleged in the indictment is not sufficient to demonstrate material prejudice to the defense by the amendment of the indictment to modify those timeframes. The indictment generally set forth a course of conduct constituting multiple offenses over a long time period, and it is difficult for the defense to now assert that the sole fact that some offenses could not have occurred in some locations during a portion of

13

the times alleged demonstrates that appellant "has demonstrated that a more specific date was material to the presentation of his defense." *State v. Daniel* (1994), 97 Ohio App.3d 548, 558. *See, also, State v. Hensley* (1991), 59 Ohio St .3d 136, 142 (child victims and residents of trailer park where defendant resided and worked as maintenance person had sufficiently frequent contact with defendant that specific dates were not material to any defense theory put forth at trial).

Appellant did not present an alibi defense for specific offenses occurring at specific dates. Moreover, E.D.'s testimony did not limit the allegations of improper sexual contact to events occurring in or near that room, even if her testimony regarding acts constituting rape are described as taking place there. The jury was free to give credence to E.D.'s testimony regarding the acts she endured while making allowance for some imprecision in chronology. If the non-existence of the room in question establishes that the rape offenses could not have taken place in that room at the times initially alleged, it would not necessarily follow that the acts never took place at all, particularly since they fell within the overall timeframe described by the victim and the indictment with respect to other offenses. The defense cannot argue that exclusion of one partial timeframe with respect to the location of certain specific acts during a long period in which multiple offenses are alleged in multiple locations would constitute a viable defense over the entire time period.

In summary, we find that appellant has failed to demonstrate that the amendment pursuant to Crim.R. 7(D) materially prejudiced the defense, or warranted dismissal or retrial on the charges in question. Appellant's first assignment of error is accordingly overruled.

*State v. Boyer, supra*, 2006 WL 3825264; *Exhibit 10 to Return of Writ*.

The factual findings of the state appellate court are presumed to be correct:

(e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue

14

> made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. 2254(e)(1). Further, a federal habeas court may not grant relief unless the decision of the state court contravened or unreasonably applied federal law, or resulted in a decision that was based on an unreasonable determination of the facts:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d).

> A state court's determination is contrary to federal law when the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or on indistinguishable facts. *Williams v. Taylor,* 529 U.S. 362, 412-13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court's decision is an unreasonable application of federal law when the state court correctly identified the applicable legal principle from Supreme Court precedent, but applied that principle to the facts before it in an unreasonable manner. *Id.* at 413, 120 S.Ct. 1495.

*Maldonado v. Wilson*, 416 F.3d 470, 475 (6th Cir. 2005).  Petitioner has failed to meet this

standard here.

To the extent that petitioner raises an issue regarding the violation of Ohio Criminal Rule 7(D), the Ohio Constitution, or state law, such issue is not appropriate for federal habeas corpus review. A federal court may review a state prisoner's habeas petition only on the grounds that the challenged confinement is in violation of the Constitution, laws or treaties of the United States. 28 U.S.C. 2254(a). A federal court may not issue a writ of habeas corpus "on the basis of a perceived error of state law." *Pulley v. Harris,* 465 U.S. 37, 41 (1984); *Smith v. Sowders*, 848 F.2d 735, 738 (6th Cir. 1988). A federal habeas court does not function as an additional state appellate court reviewing state courts' decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988). "'[F]ederal courts must defer to a state court's interpretation of its own rules of evidence and procedure'" in considering a habeas petition. *Id.* (quoting *Machin v. Wainwright*, 758 F.2d 1431, 1433 (11th Cir. 1985)). Only where the error resulted in the denial of fundamental fairness will habeas relief be granted. *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988). Such are not the circumstances here.

Likewise, to the extent that petitioner contends that amendment of the indictment mid-trial violated his right to indictment by grand jury, that claim fails to warrant federal habeas corpus relief. The guarantee of right to indictment by grand jury under the Fifth Amendment to the Constitution is not applicable to the States. *Branzburg v. Hayes*, 408 U.S. 665, 688 n.25 (1972), citing *Hurtado v. California*, 110 U.S. 516 (1884); *Williams v. Haviland*, 467 F.3d 527, 531-32 (6th Cir. 2006)(citations omitted); *Lucas v. O'Dea*, 179 F.3d 412, 417 (6th Cir.

16

1999).

Petitioner does allege that he was denied due process, fair notice of the charges, and the ability to prepare a defense based upon the prosecution's amendment of the indictment to change time frames of rape charges in counts five, six and ten to taking place from between March 29, 2002 and June 12, 2002; June 13, 2002 and March 23, 2003; and March 29, 2003 and December 1, 2003, respectively, to between July 1, 2001 and December 1, 2003. This claim likewise fails.

Due process mandates a criminal defendant be provided fair notice of the charges against him so that he may adequately prepare a defense. *Lucas v. O'Dea*, 179 F.3d 412, 417 (6th Cir. 1999); *Koontz v. Glossa*, 731 F.3d 365, 369 (6th Cir. 1984).

The United States Court of Appeals for the Sixth Circuit

> and numerous others have found that fairly large time windows in the context of child abuse prosecutions are not in conflict with constitutional notice requirements. See *Isaac v. Grider,* 2000 WL 571959 at *5 (four months); *Madden v. Tate,* 1987 WL 44909, at *1-*3 (6th Cir.1987) (six months); *see also Fawcett v. Bablitch,* 962 F.2d 617, 618-19 (7th Cir.1992) (six months); *Hunter v. New Mexico,* 916 F.2d 595, 600 (10th Cir.1990) (three years); *Parks v. Hargett,* 1999 WL 157431, at *4 (10th Cir.1999) (seventeen months). Certainly, prosecutors should be as specific as possible in delineating the dates and times of abuse offenses, but we must acknowledge the reality of situations where young child victims are involved.

*Valentine v. Konteh*, 395 F.3d 626, 632 (6th Cir. 2005).

> Failure to specify the precise dates upon which the alleged crimes occurred does not deprive the defendant of his

17

> constitutional right to due process where time is not of the essence of the offense and where the dates used are not picked arbitrarily. *See, e.g. United States v. Roman*, 728 F.2d 846 (7th Cir.), *cert. denied*, 466 U.S. 977 (1984); *United States v. Hultgren*, 713 F.2d 79 (5th Cir. 1983); *United States v. McCown*, 711 F.2d 1441 (9th Cir. 1983); *United States v. Morris*, 700 F.2d 427 (1st Cir.), *cert. denied*, 461 U.S. 947 (1983).

*Madden v. Tate*, 830 F.2d 194, unpublished, 1987 WL 44909 (6th Cir. September 30, 1987); *see also Thompson v. Bradshaw*, 2007 WL 2080454 (N.D. Ohio June 16, 2007)(lack of specific dates on three rape charges did not constitute denial of due process where defendant failed to establish that precise date was material to defense).

For reasons detailed by the state appellate court, this Court agrees that petitioner has failed to establish any prejudice from amendment of the indictment to expand the dates of the rape counts charged. This Court is unable to conclude that the state court's decision denying this claim is unreasonable so as to justify federal habeas corpus relief.

**CLAIM THREE**

In claim three, petitioner asserts that he was denied the right to confront witnesses by admission of State's Exhibit 13, *i.e.*, documents from the Children's Hospital Child Advocacy Center.[2] The state appellate court rejected this claim as follows:

> Appellant's second assignment of error asserts that the court's admission of the medical forensic interview summary prepared during the victim's assessment at Children's Hospital violated appellant's right to due process and his right to confront witnesses under the Sixth Amendment to the United

---

[2] Exhibit 13 does not appear to be a part of the record before this Court.

18

States Constitution and the Tenth Amendment to the Ohio Constitution.

> Under *Crawford v. Washington* (2004) 541 U.S. 36, 124 S.Ct. 1354, a testimonial, out-of-court statement offered against an accused to establish the truth of the matter asserted may only be admitted where the declarant is unavailable and where the accused has a prior opportunity to cross-examine the witness. *Crawford*, however, further states that "when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements." *Id*. at 59 fn. 9, citing *California. v. Green* (1970), 399 U.S. 149, 162, 90 S.Ct. 1930. The intake summaries introduced at trial included purported statements taken from the victim's mother and statements made by the victim herself. Both witnesses testified at trial, so that Confrontation Clause questions regarding their out-of-court statements are, pursuant to *Crawford*, not applicable in the present case. *See State v. Jordan*, Franklin App. No. 06AP-96, 2006-Ohio-6224, at ¶ 23, 24. Appellant's second assignment of error is accordingly overruled.

*State v. Boyer, supra; Exhibit 10 to Return of Writ*.  Again, the decision of the state appellate court is presumed to be correct.  28 U.S.C. 2254(d), (e); *Williams v. Taylor, supra*.  Petitioner has failed to establish that the state court's decision is unreasonable such that habeas corpus relief is warranted.

The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to physically confront and cross examine adverse witnesses at all stages of the trial.  *Illinois v. Allen,* 397 U.S. 337, 388, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970). In *Crawford v. Washington,* 541 U.S. 36 (2004), abrogating *Ohio v.Roberts,* 448 U.S. 56 (1980), the United States Supreme Court held that testimonial statements of a witness who does

not appear at trial are inadmissible unless the witness was unavailable to testify and the

defense had a prior opportunity for cross-examination:

> Where testimonial evidence is at issue ... the Sixth Amendment
> demands what the common law required: unavailability and
> a prior opportunity for cross examination.

*Id.,* at 1366. However,

> [t]he Court explicitly left untouched the application of *Roberts*
> to cases involving nontestimonial hearsay.... As... courts
> applying *Crawford* have observed,
>
> > [t]he lynchpin of the *Crawford* decision... is its
> > distinction between testimonial and
> > nontestimonial hearsay; simply put, the rule
> > announced in *Crawford* applies only to the
> > former category of statements.... [U]nless a
> > particular hearsay statement qualifies as
> > "testimonial," *Crawford* is inapplicable and
> > *Roberts* still controls.

*Coy v. Renico,* 414 F.Supp.2d 744, 773 (E.D. Michigan 2006), citing *United States v. Hendricks,*

395 F.3d 173, 179 (3d Cir.2005); *Horton v. Allen,* 370 F.3d 75, 83-84 (1st Cir.2004); *United*

*States v. Johnson,* 354 F.Supp.2d 939, 964 (N.D.Iowa 2005); *United States v. Savoca,* 335

F.Supp.2d 385, 391-92 (S.D.N.Y.2004). The Supreme Court declined to spell out a

comprehensive definition of the term "testimonial," but stated that, at a minimum, the term

includes

> prior testimony at a preliminary hearing, before a grand jury,
> or at a former trial; and to police interrogations. These are the
> modern practices with closest kinship to the abuses at which

20

the Confrontation Clause was directed.

*Crawford v. Washington, supra*, 124 S.Ct. at 1374. A causal remark to an acquaintance, business records, and statements made in furtherance of a conspiracy do not constitute testimonial statements subject to the strictures of the Sixth Amendment. *Id.*, at 13645, 1367. Further,

> [t]he admission of a testimonial statement in and of itself is not enough to trigger a violation of the Confrontation Clause. Instead, the statement must be used as hearsay-in other words, it must be offered for the truth of the matter asserted.

*United States v. Pugh*, 405 F.3d 390, 399 (6th Cir.2005). A violation of the Confrontation Clause is subject to harmless error review. *Id.*, at 400, citing *Jordan v. Hurley,* 397 F.3d 360, 363 (6th Cir.2005).

> Unless a constitutional error has a "substantial and injurious effect or influence in determining the jury's verdict," *Brecht v. Abrahamson,* 507 U.S. 619, 623, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (quoting *Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)), it will be considered harmless.

*Dorchy v. Jones*, 398 F.3d 783, 791 (6th Cir.2005).

Even accepting petitioner's argument that statements from the alleged victim and her mother to examining physicians constituted testimonial evidence within the meaning of *Crawford* because examining physicians were conducting the examination for the purpose of collecting evidence for trial, because both the child and mother testified and were available for cross examination, petitioner still could not establish a violation of the

Confrontation Clause violation within the meaning of *Crawford*.

> [W]hen the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements. *See California v. Green, 399 U.S. 149, 162, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970)*. It is therefore irrelevant that the reliability of some out-of-court statements " 'cannot be replicated, even if the declarant testifies to the same matters in court.' " *Post*, at 1377 *(quoting United States v. Inadi, 475 U.S. 387, 395, 106 S.Ct. 1121, 89 L.Ed.2d 390 (1986))*. The Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it. (The Clause also does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted. *See Tennessee v. Street*, 471 U.S. 409, 414, 105 S.Ct. 2078, 85 L.Ed.2d 425 (1985).)

*Crawford, supra*, 541 U.S. at 59 n.9.  *See also United States v. Kappall*, 418 F.3d 550, 554 (6th Cir. 2005); *Katt v. Lafler*, 2008 WL 780756 (6th Cir. March 24, 2008), citing *Bugh v. Mitchell*, 329 F.3d 496 (6th Cir. 2003); *United States v. Owens*, 484 U.S. 554, 560 (1988).

Claim three is without merit.

For all of the foregoing reasons, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**.

If any party objects to this *Report and Recommendation*, that party may, within ten (10) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this

Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation*.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).


/s/ Terence P. Kemp
United States Magistrate Judge